**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**CHERRY PADILLA and**
**JUAN LEON PADILLA II,**

                                        **Plaintiffs,**

**-against-**                                                    **1:07-CV-00267**

**CLOVIS & ROCHE, INC; ALVIN RUSSELL;**
**GLOBAL HEALTHCARE RESOURCES, INC;**
**and DENNIS LIGHT**,

                                        **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


                                **DECISION & ORDER**

**I.      INTRODUCTION**

        Plaintiffs commenced this action asserting claims under the Fair Debt Collection

Practices Act ("FDCPA"), 15 U.S.C. § 1692 _et seq._, and New York State law.  See Compl.

[dkt. # 1].  Plaintiffs invoke the Court's federal question, diversity of citizenship, and

supplemental subject matter jurisdictional grants. Id. ¶¶ 3-6.  Defendants Global

Healthcare Resources, Inc. ("Global") and Dennis Light ("Light") filed an Answer with

counterclaims and a cross-claim. See Ans. [dkt. # 23].  The counterclaims sound in breach

of contract and unjust enrichment. Id. ¶¶ 43-49.

        Plaintiffs move pursuant to Fed. R. Civ. P. 12(b)(1) to dismiss Global and Light's

                                        1

counterclaims, contending that the Court lacks subject matter jurisdiction over the counterclaims or, alternatively, that the Court should decline to exercise supplemental jurisdiction over the counterclaims. Global and Light have opposed the motion.

## II.    Standard of Review

On a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), the Court must assume as true factual allegations in the pleading sought to be dismissed. Shipping Financial Services Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998). The Court may look to and may consider matters outside the pleadings in deciding such a motion. Filetech S.A. v. France Telecom, S.A., 157 F.3d 922, 932 (2d Cir. 1998); John Street Leasehold, LLC v. Capital Mgt. Res., L.P., 2001 WL 310629, at *2 (S.D.N.Y. March 29, 2001). "Thus, the standard used to evaluate a Rule 12(b)(1) motion is similar to that used for summary judgment under Fed. R. Civ. P. 56." Lopresti v. Merson, 2001 WL 1132051, at *5 (S.D.N.Y. Sept. 21, 2001).

## III.   Background

Cherry Padilla was a nurse living in the Philippines who sought to obtain employment in the United States.  Global, which appears to be involved in international recruiting of healthcare workers, entered into an agreement with Ms. Padilla that would allow her "the opportunity to work in the Untied States and possibly earn citizenship." Ans. ¶ 43.  Pursuant to this agreement, Global paid the expenses for Ms. Padilla and her family "to come to the United States including airfare" and paid Plaintiffs' "[Immigration and Naturalization Service (INS)] fees, legal fees, and recruiter fees."  Id. ¶ 44.[1]   Ms. Padilla

---

[1]Plaintiffs contend that Ms. Padilla entered an employment agreement with Benedictine Hospital in
(continued...)

agreed (a) to work at a designated hospital in the United States for a specified period of time, and (b) to reimburse Global for the monies it paid on her behalf if she failed to work at a designated hospital for the agreed upon period of time.  Id. ¶ 45.

Ms. Padilla, her husband, and her son relocated to the United States and she began working as a nurse at the Benedictine Hospital in Kingston, New York on April 11, 2005.  See Compl.  ¶ 25.  Benedictine Hospital was a designated hospital within the meaning of the agreement between Ms. Padilla and Global.  Ans. ¶ 45.  On September 7, 2005, Ms. Padilla was terminated from her position at Benedictine Hospital and, according to Global and Light, failed to cooperate with them for placement at another designated hospital. See Ans. ¶ 45; Compl. ¶ 30.[2]  Global sent Ms. Padilla a letter demanding payment of the monies it paid for her and her family's relocation to the United States.  Ms. Padilla made a payment to Global but did not pay the full amount demanded.[3]

On August 21, 2006, Light, on behalf of Global, sent a second letter to Ms. Padilla demanding that she apply to work for a designated hospital or pay Global the amount it contended it was owed.  Compl. ¶ 38.  Light stated in the letter that if Ms. Padilla did not

---

[1](...continued)
Kingston, New York and that, pursuant to that agreement, Benedictine Hospital agreed to "'pay all legal fees associated with [Ms. Padilla's application for Legal Permanent Resident status]' and to reimburse up to $4,000 for Ms. Padilla's relocation, visa and exam fees." Compl. ¶ 21 (brackets in original).  Plaintiffs do assert, however, that after they relocated to the United States, Global "made a $1,000.00 loan to Ms. Padilla to cover housing expenses she incurred when she and her family moved out of the housing provided by Benedictine Hospital." Id. ¶ 26.  The exact nature and amount of the debt Ms. Padilla owe to Global, while relevant and material to the underlying claims and counterclaims, is not relevant and material to the instant motion.

[2] Upon her termination, Ms. Padilla secured employment with another health care provider in the Kingston, New York area, Compl. ¶ 30, but, apparently, her new employer was not at a "designated hospital" within the meaning of the agreement between Ms. Padilla and Global. Ans. ¶ 45.

[3] Ms. Padilla asserts that she contested the amount demanded. See Compl. ¶ 37; fn. 1 supra.

do so, he would "(1) advise the INS for deportation; (2) advise the INS that there are ethical questions that should be considered should [Ms. Padilla] request citizenship; (3) advise the State Board of Nursing of New York of ethics violations due to the fact that [Ms. Padilla] ha[d] failed to work with [him] in a new placement or at least agreed to repay the expenses incurred for [Ms. Padillia]." Compl. ¶ 41 (brackets in original).

Sometime thereafter, Global placed the debt with Defendant Clovis & Roche, Inc. ("Clovis & Roche") for collection. Id. ¶ 45. Clovis & Roche, through Defendant Alvin Russell ("Russell"), continued to assert Global and Light's position that the INS and the State Board of Nursing of New York would be notified of Ms. Padilla's conduct. Id. ¶¶ 45-55.

Plaintiffs commenced this action asserting (1) FDCPA claims against Clovis & Roche and Russell, Compl. ¶¶ 79-81, (2) common law claims of intentional infliction of emotional distress and fraud against all defendants, id. ¶¶ 82-93, (3) common law claims of negligence and gross negligence against Global and Light, id. ¶¶ 94-97, (4) common law claims of negligence and gross negligence against Clovis & Roche, id. ¶¶ 98-104, and (5) claims of deceptive business practices under New York Business Law § 349 against Clovis & Roche and Russell. Id. ¶¶ 105-109. As indicated above, Global and Light filed counterclaims against Plaintiffs sounding in breach of contract and unjust enrichment. Ans. ¶¶ 43-49. This motion followed.

## VI.    DISCUSSION

### a.    Lack of Jurisdiction to Entertain State Law Counterclaims

Plaintiffs argue that Global and Light's counterclaims must be dismissed because

they do not form part of the same case or controversy as the FDCPA claims and,

therefore, there exists no supplemental jurisdictional to entertain the counterclaims. The

Court disagrees.[4]

Assuming *arguendo* that the FDCPA claims against Clovis & Roche and Russell

are the only claims over which the Court has original jurisdiction, see fn. 4, *supra*; Plt.

Reply Mem. L. p. 3 ("Because the claims giving rise to federal jurisdiction here are the

FDCPA claims – and not the state law claims against Global and Light – an analysis of

supplemental jurisdiction must be done in reference to those claims."), there is a basis to

exercise supplemental jurisdiction over the counterclaims. Section 1367(a) of Title 28 of

the United States Code provides in pertinent part:

> [I]n any civil action of which the district courts have original jurisdiction, the
> district courts shall have supplemental jurisdiction over all other claims that
> are so related to claims in the action within such original jurisdiction that they
> form part of the same case or controversy under Article III of the United
> States Constitution.

28 U.S.C. § 1367(a).

State and federal claims form "one case or controversy" when they "derive from a

common nucleus of operative facts or when both claims would normally be expected to be

tried in a single judicial proceeding." United Mine Workers of America v. Gibbs, 383 U.S.

715, 86 S. Ct. 1130, 16 L. Ed.2d 218 (1966).  The FDCPA claims and the state law

counterclaims meet this test.  See Jones v. Ford Motor Credit Co., 358 F.3d 205, 213 & n.

---

[4] Although Plaintiffs assert that diversity jurisdiction exists under 28 U.S.C. § 1332,  see Compl. ¶ 6,
Global and Light have denied that diversity jurisdiction exists and denied the allegations concerning their
citizenship. See Ans. ¶¶ 1 & 2  (denying the allegations in the Complaint at ¶ 6 pertaining to diversity
jurisdiction, and denying the allegations in the Complaint at  ¶¶ 18 & 20 pertaining to the citizenship of Global
and Light). Global and Light argue, instead, that supplemental jurisdiction exists over the counterclaims.
Based upon Global and Light's position, the Court will analyze whether supplemental jurisdiction exists over
the counterclaims.

5 (2d Cir. 2004) (noting that "[t]here is some doubt as to whether section 1367's expansion of supplemental jurisdiction to its constitutional limits renders the provision's scope broader than was contemplated in <u>Gibbs</u>" but concluding that "[w]hether or not the <u>Gibbs</u> 'common nucleus' standard provides the outer limit of an Article III 'case,' and is therefore a requirement for entertaining a permissive counterclaim that otherwise lacks a jurisdictional basis, the facts of [Defendant's debt collection] counterclaims and those of Plaintiffs' [federal Equal Credit Opportunity Act] claims satisfy that standard, even though the relationship is not such as would make the counterclaims compulsory.").  Indeed, if they did not form part of the same case or controversy, then it would stand to reason that there would be no supplemental jurisdiction over Plaintiffs' state law claims.  If there was no supplemental jurisdiction over Plaintiffs' state law claims, Global and Light would necessarily be dismissed from the action because Plaintiffs bring only state law claims against Global and Light.  If this were to occur, the question of supplemental jurisdiction over the counterclaims would be rendered moot.

Further and assuming *arguendo* that there is subject matter jurisdiction to entertain Plaintiffs' state law claims, the counterclaims are compulsory of Plaintiffs' fraud claim. <u>See</u> Fed. R. Civ. P. 13(a).[5]  As the Second Circuit Court of Appeals has instructed,

---

[5]Rule 13(a) provides in pertinent part:

**(a) Compulsory Counterclaims.** A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

Fed. R. Civ. Pro. 13(a).  The amendments to this Rule, scheduled to take effect on December 1, 2007, do not change the content of Rule 13(a).  <u>See</u> Advisory Committee Notes, 2007 ("The language of Rule 13 has been amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic

6

> [w]hether a counterclaim is compulsory or permissive turns on whether the
> counterclaim arises out of the transaction or occurrence that is the subject
> matter of the opposing party's claim, and this Circuit has long considered this
> standard met when there is a logical relationship between the counterclaim
> and the main claim.  Although the logical relationship test does not require
> an absolute identity of factual backgrounds, the essential facts of the claims
> must be so logically connected that considerations of judicial economy and
> fairness dictate that all the issues be resolved in one lawsuit.

Jones v. Ford Motor Credit Co., 358 F.3d 205, 209 (2d Cir.  2004)(internal citations,

quotation marks, and brackets omitted).

While numerous cases have determined in FDCPA actions that state law debt

collection counterclaims are permissive counterclaims under Fed. R. Civ. P. 13, see Pltf.

Mem. L. pp. 5-6,[6] the instant action, inasmuch as it is against Global and Light, is not a

FDCPA action.  The subject matter of Plaintiffs' fraud claim against Global and Light

concern the nature of the agreement between Ms. Padilla and Global. Compl. ¶ 89. [7]

Defendants' counterclaims arise out of the same transaction or occurrence that is the

subject matter of the fraud claim.  There is a logical relationship between the

counterclaims and the fraud claim, and considerations of judicial economy and fairness

dictate that all the issues related to these claims be resolved in one lawsuit.  As Plaintiffs

---

[5](...continued)
only.").

[6] Plaintiffs cite, inter alia, Hart v. Clayton-Parker and Associates, Inc., 869 F. Supp. 774, 777 (D. Ariz. 1994)("Every published decision directly addressing the issue in this case has found that FDCPA lawsuits and lawsuits arising from the underlying contractual debt are not compulsory counterclaims.") (emphasis in the original) (citing various cases); Berrios v. Sprint Corp., No. CV-97-0081, 1998 WL 199842, at *9 (E.D.N.Y. March 16, 1998)("All reported decisions on the issue have found that a defendant's counterclaims for payment of an overdue debt are distinct from, and not logically related to, a plaintiff's FDCPA claim based on improper debt collection practices").

[7] In the fraud claim, Plaintiffs contend that "Defendants [Global and Light] made numerous false statements to Ms. Padilla in order to induce Ms. Padilla to pay them $5,841.53, which was more than she owed." Compl. ¶ 89.

acknowledge, if the counterclaims are compulsory, "subject matter jurisdiction exists."  Pltf. Mem. L. P.  6.

### b.      Declination of Jurisdiction

Plaintiffs argue in the alternative that if supplemental jurisdiction exists over the counterclaims, the Court should decline to exercise its jurisdiction under 28 U.S.C. § 1367(c)(2) and (4).[8]  In making this argument, Plaintiffs rely on several FDCPA cases that have declined to exercise supplemental jurisdiction over state law debt collection counterclaims because the state law counterclaims would substantially predominate over the FDCPA claim, and because allowing such counterclaims would tend to discourage FDCPA plaintiffs from commencing suit.  See Pltf. Mem. L. pp. 10-14.[9]  While the Court agrees with the reasoning of the cited cases, Plaintiffs' argument falters in this case.

The counterclaims would not substantially predominate over the substance of Plaintiffs' claims when these claims are examined en toto.  Plaintiffs assert, inter alia, that:

---

[8] Section 1367(c)(2) and (4) provide:

**(c)** The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--

* * *
**(2)** the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

* * *
**(4)** in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

[9] Plaintiffs cite, inter alia, Avery v. First Resolution Mgmt. Corp., 2007 WL 1560653, at * 8 (D. Or. May 25, 2007); Barcena v. Tam Finance Corp., No. EP-07-CA-0020-KC, 2007 WL 1452587, *4 (W.D. Tex. May 8, 2007); Moore v. Old Canal Fin. Corp., 2006 WL 851114, at * 3 (D. Idaho March 29, 2006);  Campos v. W. Dental Svcs., Inc., 404 F. Supp. 2d 1164, 1168-69 (N.D. Cal. 2005); Sparrow v. Mazda Am. Credit, 385 F. Supp. 2d 1063, 1069 (E.D. Cal. 2005); Evans v. Am. Credit Systems, Inc., 2003 WL 23018529, at *1-*2 (D. Neb. Dec. 10, 2003).

(1) Global and Light engaged in fraudulent conduct "in order to induce Ms. Padilla to pay them $5,841.53. which was more than she owed," Compl. ¶ 89; (2) Global and Light were negligent and grossly negligent "in selecting and supervising the debt collection firm it hired," id. ¶ 96;  (3) Clovis & Roche was negligent and grossly negligent "in the hiring, retention, training, and/or supervision of its employees," id. ¶ 99; and (4) all defendants intentionally inflicted emotional distress upon Plaintiffs through their efforts in attempting to collect the debt that Global claimed was due. Id. ¶¶ 82-87.  These claims bring into the controversy issues concerning the validity of the underlying debt, the nature and extent of the statements made by defendants, and reasonableness of defendants' actions.  The proof, scope of the legal issues involved, and remedies available under these claims are seemingly coextensive with the counterclaims. See Lynch  v. U.S. Automobile Ass'n, 2007 WL 3355506,  at * 4 (S.D.N.Y.  Nov. 8, 2007) ("Although no test exists for establishing when state-law claims 'substantially predominate' over federal claims, the Supreme Court has identified certain factors to consider when making that determination: the proof needed to establish the state-law issues; the scope of the state-law issues raised; or the comprehensiveness of the remedy sought.")(citing United Mine Workers of America v. Gibbs, 383 U.S. 715, 726-27 (1966)).

While the proof necessary to establish the FDCPA claims against Clovis & Roche and Russell may be limited, Plaintiffs' state law claims raise issues well beyond that of the FDCPA-defendants' efforts to collect a debt.  Institution of these claims by Plaintiffs counteract the concern that the counterclaims would predominate over the facts necessary to establish a FDCPA case.  Thus, there is no basis to decline to exercise supplemental jurisdiction over the counterclaims under 28 U.S.C. § 1367(c)(1).

The public policy concern arising from the deterrent effect of entertaining state law debt collection counterclaims in a FDCPA case also does not present itself here.  Plaintiffs have asserted claims well beyond the run-of-the-mill FDCPA claim.  By virtue of their decision to bring these state law claims, and to bring in Global and Light even though no FDCPA claim exists against them, Plaintiffs have demonstrated their fortitude in the adversary process.  There is no compelling reason to decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(4).  See Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442, 448 (2d Cir. 1998)("[D]eclining jurisdiction outside the ambit of  [28 U.S.C. § ] 1367(c)(1)-(3) appears as the exception rather than the rule. Thus, federal courts 'must ensure that the reasons identified as 'compelling' are not deployed in circumstances that threaten this principle.'")(citations omitted).

## V.    CONCLUSION

For the reasons set forth above, Plaintiffs' motion to dismiss the counterclaims brought by Defendants Global and Light is **DENIED**.

**IT IS SO ORDERED**.

DATED:   November 29, 2007

Thomas J. McAvoy
Senior, U.S. District Judge

10